UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON, D.C.

| | |
|---|---|
| ROBERT M. MILLER,<br><br>*Plaintiff-Petitioner*,<br><br>v.<br><br>MARTIN J. GRUENBERG, CHAIRMAN, FEDERAL DEPOSIT INSURANCE CORP.,<br><br>*Defendant-Respondent*. | Case: 1:23-cv-00132<br>Assigned To : Unassigned<br>Assign. Date : 1/17/2023<br>Description: Employ. Discrim. (H-DECK) |

## PETITION FOR ENFORCEMENT

**COMES NOW** Plaintiff Robert M. Miller, *pro se*, seeking enforcement of a final decision of the Equal Employment Opportunity Commission ("EEOC" or "Commission") granting Plaintiff relief for age and sex discrimination and retaliation for prior protected activities under the Civil Rights Act of 1964, Pub.L. 88-352, 78 Stat. 241 (1964) as amended ("Title VII"). Plaintiff alleges Defendant deliberately underpaid Plaintiff back pay and benefits ordered by the Commission.

## PARTIES

1. At all times relevant to this petition, Plaintiff was employed by the Federal Deposit Insurance Corporation ("FDIC" or "Agency"). At the inception of Plaintiff's discrimination and retaliation complaints, Plaintiff was an Economic Analyst, CG-0110-12, in FDIC's San Francisco Regional Office. From March 8, 2015, to the present, Plaintiff was assigned as a Senior Financial Economist, CG-0110-13/14, at FDIC Headquarters in Washington, D.C.

2. FDIC is a federal government corporation as defined by 31 U.S.C. § 9101, headquartered in Washington, D.C. Congress has waived FDIC's sovereign immunity under Title VII and FDIC's charter. See 42 U.S.C. § 2000e-16; 12 U.S.C. § 1819(a).

3. Defendant-Respondent Martin J. Gruenberg is Chairman of the FDIC, in Washington, D.C.

1

RECEIVED
JAN 17 2023
Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

5. Venue is proper under 28 U.S.C. § 1391(e)(1) as FDIC is a federal corporation headquartered in Washington, D.C.; Defendant Gruenberg is Chairman of the FDIC; and a substantial part of the events giving rise to the claims occurred in or near Washington, D.C.; and Plaintiff works for FDIC in Washington, D.C.

6. This Court has jurisdiction to hear this Petition for Enforcement ("PFE") and Plaintiff exhausted administrative remedies because more than 180 days have passed since Plaintiff submitted his PFE to the Commission on February 8, 2021, docketed by the Commission on September 27, 2021, without the Commission reaching a final decision. Exh. 1, 15. See Section 717(c) of Title VII, 42 U.S.C. § 2000e-16(c); 5 C.F.R. § 1614.503. See also *Wilson v. Pena*, 79 F.3d 154, 164, 166—168 (D.C. Cir. 1996). Plaintiff does not need a right to sue letter. *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 228 (D.D.C. 2010).

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### Fundamental Facts of Comparability Pay, a.k.a. Locality Pay

7. Plaintiff has a Bachelor of Science (B.S.) degree in Mathematics and Economics from the University of Colorado at Denver, conferred in 1992. Plaintiff has Master of Arts (M.A) and doctoral (Ph.D.) degrees in Economics from the University of Illinois, conferred in 1995 and 2002.

8. As an Economist, Plaintiff is an expert in analyzing and comparing data across time and across different geographical locations, particularly concerning economic effects.

9. *Nominal pay* is the dollar figure an employee would see on his paychecks or earnings statements.

10. *Real pay* is nominal pay adjusted for the local cost of living.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

5. Venue is proper under 28 U.S.C. § 1391(e)(1) as FDIC is a federal corporation headquartered in Washington, D.C.; Defendant Gruenberg is Chairman of the FDIC; and a substantial part of the events giving rise to the claims occurred in or near Washington, D.C.; and Plaintiff works for FDIC in Washington, D.C.

6. This Court has jurisdiction to hear this Petition for Enforcement ("PFE") and Plaintiff has exhausted all administrative remedies because more than 180 days have passed since Plaintiff submitted his PFE to the Commission ("EEOC PFE") on February 8, 2021, docketed by the Commission on September 27, 2021, without the Commission reaching a final decision. Exhibit 1. See Section 717(c) of Title VII, 42 U.S.C. § 2000e-16(c); 5 C.F.R. § 1614.503. See also *Wilson v. Pena*, 79 F.3d 154, 164, 166—168 (D.C. Cir. 1996). Plaintiff does not need a right to sue letter. *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 228 (D.D.C. 2010).

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### Fundamental Facts of Comparability Pay, a.k.a. Locality Pay

7. Plaintiff has a Bachelor of Science (B.S.) degree in Mathematics and Economics from the University of Colorado at Denver, conferred in 1992. Plaintiff has Master of Arts (M.A) and doctoral (Ph.D.) degrees in Economics from the University of Illinois, conferred in 1995 and 2002.

8. As an Economist, Plaintiff is an expert in analyzing and comparing data across time and across different geographical locations, particularly concerning economic effects.

9. *Nominal pay* is the dollar figure an employee would see on his paychecks or earnings statements.

10. *Real pay* is nominal pay adjusted for the local cost of living.

2

11.     A *cost-of-living index* measures the relative costs between different geographical areas for a particular basket of goods, including food, clothing, housing, transportation, taxes, etc. A cost-of-living index arbitrarily selects one location as the base location and sets the index at that location to 100. A location with basket costs 50% higher than the base locality would have a cost-of-living index of 150. A location with basket costs 25% lower than the base locality would have a cost-of-living index of 75.

12.     When comparing pay between different locations with different costs of living, it is essential to compare real pay, not nominal pay. Real pay correctly represents the *purchasing power* of each person's income across geographies.

13.     Real pay is calculated by dividing nominal pay by the cost-of-living index, then multiplying by 100.

14.     For example, a person earning $100,000 in Spokane, Washington with a cost-of-living index of 100 (real pay of $100,000) would have a much higher standard of living[1] than a person earning $100,000 in San Francisco with a cost-of-living index of 150 (real pay of $50,000). To equalize the purchasing power of pay, the San Francisco employer would have to provide its employee 50% more income – $150,000 – to make the employee as well off as the one in Spokane. After this plus-up to pay, while the San Francisco employee has much higher nominal pay than the one in Spokane, their real pay would be equal.

15.     To make federal employers more competitive with private employers in the *same location*, Congress authorized the Government Services Administration ("GSA") to determine comparability pay, commonly known as "locality pay," for various locations where federal

---

[1] All else equal.

3

employees work throughout the country and overseas. 5 U.S.C. § 5302(6)—(7). See also Federal Salary Reform Act of 1962, Pub.L. 87-793 (1962), 76 Stat. 841; Federal Pay Comparability Act of 1970, Pub.L. 91-656 (1971), 84 Stat. 1946.

16. Locality pay would roughly equalize the nominal pay (and real pay)[2] of a federal employee working in a similar job to a private sector employee at the same location. 5 U.S.C. § 5301 et seq. This expressly acts as an incentive for highly talented people to take federal jobs.

17. Thus, GSA's locality rates are roughly equal to the cost-of-living index minus 100, divided by 100.[3] For example, if San Francisco has a cost-of-living index of 150, locality pay is:

$$(150 - 100) / 100 = 50\%$$

18. As a tautological mathematical consequence, locality pay also roughly equalizes the real pay of similarly situated federal employees working in *different locations*. That is, two federal employees with identical base pay who live in places with different costs of living will have different nominal pay, but their real pay is roughly equal. This acts as an incentive for well-qualified federal employees to take jobs in higher cost of living areas without reducing their purchasing power. Absent locality pay, a federal employee could be "promoted into bankruptcy" by accepting a higher-grade position in a higher-cost area.

19. Like locality pay, interest payments on back pay or breakage on investment accounts equalize the purchasing power of pay or investment returns across different *times*, i.e., adjusting

---

[2] Nominal pay and real pay are equal in the same location.

[3] However, locality pay has a minimum standard rate (e.g., 16.2% in 2022), so federal employees living in very low-cost areas have a windfall gain at government expense and have higher real pay than identical employees in higher-cost areas.

4

for price inflation or capital gains, making an employee economically whole for pay or benefits unlawfully deprived in the past.

20. Agencies are required to provide federal employees with *per diem* whenever their duties carry them away from their assigned duty stations. 5 U.S.C. § 5702. *Per diem* includes costs of lodging, meals, and incidental expenses.

21. Like locality pay, *per diem* rates are based on the cost of living at the temporary work location. 5 C.F.R. § 531.601.

22. As a federal corporation with a collective bargaining unit, FDIC has enhanced benefits for travel above those of federal agencies.

**Case Specific Facts and Procedural Background**

23. In 2014, Plaintiff was an Economic Analyst, CG-0110-12, in the San Francisco Regional Office, receiving locality pay of 42.14 percent.[4] This increased to 43.04 percent effective the pay period beginning January 11, 2015.

24. In late 2013 to early 2014, Plaintiff applied for two separate FDIC positions in Washington, D.C. with promotion potential. The first was a Senior Financial Economist ("SFE") position, CG-0110-13/14, in FDIC's Banking and Regulatory Analysis Section. The second was a Financial Economist position, CG-0110-12/13/14, in FDIC's Center for Financial Research ("CFR" position).

25. The locality pay rate at the time in Washington, D.C. was 21.01 percent.[5] This increased to 22.16 percent effective on January 11, 2015.

---

[4] The locality rate for pay period 12/29/13 to 01/11/14 in San Francisco was 40.99 percent.
[5] The locality rate for pay period 12/29/13 to 01/11/14 in Washington, DC was 19.86 percent.

5

26. On or about February 27, 2014, Plaintiff learned selecting official Munsell St. Clair for the SFE position selected Ashley Mihalik, a much lesser-qualified, young, minority, female.

27. On or about February 27, 2014, subject-matter expert Yan Lee marked down Plaintiff's self-assessed rating from Category A to Category B for the CFR position. Since only Category A candidates were interviewed, the mark down was effectively a non-selection.

28. Moreover, as a disabled veteran, Plaintiff would have "floated to the top" of Category A had he not been marked down. 5 C.F.R. § 211.102(d)(4). Defendant could not have selected a non-veteran without Office of Personnel Management ("OPM") sustaining a request to "pass over" a veteran, which is granted only for severe character defects not present in Plaintiff. 5 C.F.R. § 332.406(c). Defendant selected three non-veterans, all of whom were under age 40.[6]

29. On April 17, 2014, Plaintiff filed a formal EEO Complaint alleging age, race, sex, and disability discrimination and retaliation for prior EEO complaints for these Agency actions.

30. On November 14, 2014, Plaintiff timely requested a hearing from the Commission.

31. At hearings in 2016 and 2017, one of Defendant's witnesses for each position admitted that someone attempted to adversely influence Plaintiff's non-selections. Both witnesses claimed to not remember who these people were.

32. On July 4, 2019, an EEOC administrative judge entered a Preliminary Decision finding FDIC liable for discrimination on the basis of age and sex, and for retaliation, for both non-selections.

---

[6] Defendant could have selected the three non-veterans provided Defendant held open one or more unfilled vacancies for Plaintiff and other marked-down veterans, which Defendant did not do. 5 C.F.R. § 332.406(e)

6

33. The EEOC judge found all five agency witnesses not credible, and the reasons for their actions pretextual. The judge found Plaintiff's education and experience "plainly superior" to Mihalik. The judge found Lee treated Plaintiff differently than similarly situated younger and female applicants. The judge found witness inability to remember who influenced Plaintiff's non-selections to be "selective amnesia." The judge recommended disciplinary action for Lee, St. Clair, and HR Officer Monica Cain.

34. On October 17, 2019, another administrative judge issued the final Decision. Exhibit 2.

35. On November 26, 2019, FDIC issued its final order declining to implement the administrative judge's Decision – effectively an appeal to EEOC's Office of Federal Operations ("OFO").

36. On September 11, 2020, OFO reversed the FDIC's final order, affirming the Commission's decision, and ordering FDIC to "determine and pay the appropriate amount of back pay, with interest, and other benefits due Complaint pursuant to 29 C.F.R. § 1614.501," and $10,000 of non-pecuniary compensatory damages. Exhibit 3.

37. On December 15, 2020, Defendant submitted to the Commission a compliance report. Exhibit 4.

38. Defendant paid Plaintiff $10,000 in compensatory damages on or about October 7, 2020.

39. Agency calculated back pay for a gross total of $5,553.60. *Id.*

40. Defendant produced a spreadsheet showing back pay of $5,390.40, which inexplicably did not match the calculation in the Compliance Report. Exhibit 9. The cause of this discrepancy is Defendant erroneously used a 16.06% locality rate for Washington, D.C. from December 31, 2013 to January 11, 2014 instead of the correct rate of 19.86%. Exhibit 10.

41.     After deductions, taxes, and interest, the net back pay due was $4,131.16, which Defendant paid Plaintiff.

42.     Defendant made payments and adjustments for breakage in Plaintiff's Thrift Savings Plan and T. Rowe Price retirement accounts based on the back pay calculations.

43.     On February 8, 2021, Plaintiff filed a Petition for Enforcement ("PFE") arguing FDIC erroneously calculated the amount of back pay due, and consequently all interest and benefits. Exh. 1.

44.     Defendant's calculations relied on an EEOC decision finding that a federal employee was not entitled to back pay because the (nominal) pay at the locality rate for his present position in Ohio was higher than the (nominal) pay at the locality rate for the discriminatorily denied position in Las Vegas. *Petitioner v. LaHood*, EEOC DOC 0420130008 (EEOC), 2013 WL 6045909 (2013). Exhibit 5.

45.     Despite claiming to apply *LaHood*, instead of calculating *zero* back pay due for Plaintiff in periods when his pay in San Francisco was higher than the discriminatorily denied pay in Washington, D.C., Defendant calculated *negative* back pay at grade 13 from December 29, 2013 to January 24, 2015, and reduced (positive) back pay at grade 14 from January 25, 2015 to March 7, 2015.[7] Exh. 6; 9, 10.

46.     Defendant netted negative back pay calculations against future periods of positive back pay, reducing Plaintiff's back pay by approximately $10,137.60.[8] *Id.*

47.     If Defendant's calculated back pay were lower than it should have been, this would also reduce Plaintiff's entitlements to interest, and for his contributions and FDIC's matching

---

[7] After Plaintiff moved to Washington, D.C., there were no discrepancies in back pay.
[8] Originally $10,300.80 due to Defendant's error in the pay period 26-2013 locality rate for D.C.

8

contributions to his retirement accounts, with associated breakage from lost capital gains and interest.

48. Responding to Plaintiff's EEOC PFE on August 2, 2021, Defendant's *Response*, Exhibit 6, corrected the locality rate error in pay period 26-2013 on the spreadsheet, resulting in $5,553.60 back pay due and matching the payment made, but Defendant maintained reliance on *LaHood* and continued to calculate negative back pay from December 29, 2013 through January 15, 2015. See also Exhibit 10.

49. Defendant's *Response* still did not provide any itemization of the deductions from back pay or calculations of the pre- and post-judgment interest rates or payments.

50. *FDIC's Supplementary Documentation in Response to Petition of Enforcement* included an exhibit showing Defendant's entries into OPM's Back Pay Calculator. Exhibit 7.

51. Based on Defendant's inputs, OPM's Back Pay Calculator showed zero back pay due from December 29, 2013 to January 24, 2015, not negative back pay as Defendant's spreadsheet calculated. *Id.*, Entries 1—32; Exh. 6, 10.

52. Defendant's inputs of zero dollars were clearly erroneous, but Plaintiff confirmed with OPM's Back Pay Calculator the correct inputs at the D.C. locality rate would have also resulted in zero back pay due for these periods.

53. To force OPM's Back Pay Calculator to arrive at the same total back pay due as Defendant's corrected spreadsheet ($5,553.60), Defendant[9] made false entries for Corrected Gross Pay into the calculator from June 14, 2015 through March 19, 2016. Exh. 7, Entries 45—65.[10]

---

[9] By and through Agency Counsel Aaron Wade Norman or someone acting on his behalf.
[10] Excluding Entry 58, an annual rate adjustment.

9

54. Defendant falsified Corrected Gross Pay for Entries 45—60 of $5,597.12, resulting in back pay of $48.32. *Id.* These entries should have been $6,104.00 with back pay of $552.20. The error in each Corrected Gross Pay entry was $506.88. *Id.*

55. For Entries 61—65 (after Plaintiff was promoted to grade 14), Defendant again falsified Corrected Gross Pay as $5,829.92, which should have been $6,336.80. *Id.* The calculator shows back pay of $69.92 in each period, which should have been $576.80. *Id.* Again, the error in each pay period was $506.88.

56. The total reduction of back pay from Entries 45—65 was $10,137.60.[11]

57. The total amounts that Defendant reduced in the OPM Back Pay Calculator is *exactly* equal to the difference between Defendant's erroneous back pay calculation of $5,553.60 and the proper back pay of $15,691.20 if Defendant correctly applied the decision in *LaHood*. Exhibit 11.

58. On August 17, 2021, Plaintiff submitted his *Reply* to Defendant's opposition. Exhibit 8.

59. If back pay due were based on base pay alone, without locality adjustments, Plaintiff would have been due a total of $26,179.20. Exhibit 12.

60. If Defendant properly made Plaintiff economically whole by paying the San Francisco locality rate in each period (real pay) he lived and worked there, his back pay due would have been $34,813.60. Exhibit 13.

61. If Plaintiff's proper duty station was Washington D.C. during the periods of discrimination, Plaintiff would be due *per diem* of $65,341.10 for working in San Francisco, away from his duty station. Exhibit 14.

---

[11] Error of $506.88 × 20 pay periods = $10,137.60 (excluding Entry 58).

62. On August 7, 2021, more than 180 days had passed since Plaintiff submitted his PFE without a final decision from the Commission.

63. On March 26, 2022, more than 180 days had passed since Plaintiff's PFE was docketed by the Commission.

64. While Plaintiff was not represented by counsel for his EEOC PFE, he retained Ryan Green of Tully Rinckey, PLLC for legal research and advice in preparation for the PFE.

## CLAIM ONE
### Petition for Enforcement of an EEOC Final Order

65. Plaintiff realleges all foregoing facts and incorporates them herein by reference.

66. On October 17, 2019, Plaintiff became a prevailing party in an EEOC complaint on the basis of discrimination (age, sex) and retaliation for two non-selections in 2014.

67. Defendant refused to implement the EEOC's order and appealed to the Office of Federal Operations ("OFO").

68. On September 11, 2020, OFO reversed Defendant's final order, and ordered Defendant to pay Plaintiff compensatory damages of $10,000 and the appropriate amount of back pay.

69. As a remedy, Defendant notionally transferred Plaintiff from San Francisco to Washington, D.C., effective December 31, 2013 – the date of the earlier discriminatory and retaliatory non-selection.

70. However, because of Defendant's discrimination and retaliation, Plaintiff continued to live and work in San Francisco until he was promoted and transferred to Washington, D.C. for an unrelated position on March 8, 2015, and he reported for duty on April 20, 2015.

71. During the period of discrimination, Plaintiff paid expenses and taxes based on San Francisco's exorbitant cost of living.

72. Had the discrimination and retaliation not occurred, Plaintiff would have been actually transferred to Washington, D.C. effective December 31, 2013, and he would have enjoyed the lower cost of living in that area from that date.

73. By providing back pay at the lower Washington, D.C. locality rate from December 31, 2019 through March 7, 2015, Defendant failed to make Plaintiff economically whole.

74. Defendant claimed reliance on an EEOC decision where the Commission ruled a Complainant was due no back pay because his nominal pay was higher than the position discriminatorily denied. *Petitioner v. LaHood*, EEOC DOC 0420130008 (EEOC), 2013 WL 6045909 (2013).

75. The Commission's decision in *LaHood* is erroneous because it failed to make that petitioner economically whole. The plain language of statutes and regulations, Congressional intent, and well-established law supports Plaintiff's contention he deserves locality pay where he actually lived and worked.

76. Assuming *LaHood* was correctly decided, Defendant still deliberately and erroneously calculated negative back pay during the periods of discrimination and netted these against future periods of positive back pay.

77. Assuming *LaHood* was correctly decided, Plaintiff would be due *per diem* and other travel benefits every day he worked in San Francisco away from his official duty station in Washington, D.C. during the periods of discrimination.

78. Defendant's underpayment of back pay also reduced interest and retirement account contributions and breakage.

79. Defendant deliberately submitted false statements and a falsified calculation of back pay to the Office of Federal Operations to support its erroneous back pay computations.

80. Facts alleged above, plain statutory text, Congressional intent, and clearly established law support Plaintiff's claim for additional back pay, benefits, interest, breakage, and other costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff requests that the court grant Plaintiff's *Petition for Enforcement* and order the following relief:

1. **OVERTURN** the EEOC's decision in *Petitioner v. LaHood*, EEOC DOC 0420130008 (EEOC), 2013 WL 6045909 (2013), and hold that to make a prevailing complainant economically whole, an agency must calculate back pay according to the location where the complainant actually lives and works because of the unlawful discrimination and retaliation.[12]

2. Alternatively, uphold the EEOC's decision in *LaHood*, but **ORDER** Defendant to amend negative back pay calculations in any pay period to zero.

3. Alternatively, uphold the EEOC's decision in *LaHood*, but **ORDER** Defendant to calculate Plaintiff's entitlement to *per diem* and every other travel benefit due for every day Plaintiff was forced to work in San Francisco away from his corrected official duty position in Washington, D.C., in an amount to be determined at trial.

4. **ORDER** Defendant to provide Plaintiff back pay, benefits, interest, breakage, in an amount to be determined at trial.

---

[12] Notably, a reversal of *LaHood* as Plaintiff requests in this petition would reduce back pay due when a complainant lives in a low-cost area because of a discriminatory non-selection for a position in a higher-cost area. This is correct because paying a complainant for higher costs they did not actually incur unfairly penalizes the agency.

13

5. **ORDER** Defendant to pay compensatory damages in an amount to be determined at trial.

6. **ORDER** Defendant to pay liquidated damages for their deliberate refusal to provide the correct amount of back pay, in an amount to be determined at trial.

7. **ORDER** Defendant to pay reasonable and appropriate legal fees and other expenses associated with this *Petition* and Plaintiff's *Petition for Enforcement* to the Commission.

8. **ORDER** Defendants to pay for accounting services for Plaintiff to amend his tax returns for the years affected by Defendant's underpayment of back pay and benefits.

9. **SANCTION** Defendant, Defendant's counsel, and any other parties for deliberate false statements and submission of falsified documents to the Commission, violating 18 U.S.C. § 1001.

10. Any other relief this Court deems just.

Plaintiff verifies under penalty of perjury of the laws of the United States that the foregoing facts are true and correct, as if by affidavit. 28 U.S.C. § 1746.

EXECUTED January 17, 2023.

*/s/ Robert M. Miller*

Robert M. Miller, Ph.D.
4094 Majestic Ln., #278
Fairfax, VA 22033
(415) 596-2444
RobMiller44@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 17, 2023, a copy of the foregoing **PETITION FOR ENFORCEMENT** was filed in person to the Court.

I caused a copy of this filing and summons to be served to the following parties by a non-party over age 18, by the means shown:

**CERTIFIED MAIL**

Debra Decker
Deputy Executive Secretary
Federal Deposit Insurance Corp.
550 17th Street, NW
Washington, D.C. 20429

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, D.C. 20530-0001

**EMAIL BY CONSENT \***

Civil Process Clerk
U.S. Attorney's Office for D.C.
601 D Street, NW
Washington, DC 20530
(202) 252-2500
USADC.ServiceCivil@usdoj.gov

/s/ Robert M. Miller

Pro Se

---

\* https://www.justice.gov/usao-dc/civil-division